# EXHIBIT "A"

STATE OF NORTH CAROLINA                    FILED              IN THE GENERAL COURT OF JUSTICE
                                                                         SUPERIOR COURT DIVISION
ROWAN COUNTY                    2022 NOV 18 P 1:59                  22 CVS 1937

                                ROWAN CO., C.S.C.
                                BY

SHARON KELLY, as the Administrator of
the Estate of CAROLYN PHILBECK,
deceased,

    Plaintiff

    v.

ACCORDIUS HEALTH AT SALISBURY,
LLC d/b/a "Accordius Health at Salisbury,"
and ACCORDIUS HEALTH LLC,

    Defendants.

**COMPLAINT**

The plaintiff, complaining of the defendants, alleges that:

1. The plaintiff, Sharon Kelly, is a citizen and resident of York County, South Carolina. She brings this action in her capacity as the duly appointed Administrator of the Estate of Carolyn Philbeck (Cleveland County, North Carolina, File No. 21E209), who died on November 29, 22 in Rowan County. At the time of her death Carolyn Philbeck (hereinafter referred to as "Ms. Philbeck") was a resident of Rowan County, North Carolina.

2. Defendant Accordius Health at Salisbury, LLC is a limited liability company organized and existing under the law of the State of North Carolina and having its principal place of business in Englewood Cliffs, New Jersey. At all times pertinent to this action, defendant Accordius Health at Salisbury LLC operated a skilled nursing facility known as "Accordius Health at Salisbury" (hereafter referred to as "Accordius Salisbury") located at 635 Statesville Boulevard, Salisbury, Rowan County, North Carolina.

3. At all times pertinent to this action, defendant Accordius Health at Salisbury, LLC was licensed by the North Carolina Department of Health and Human Services, Division of Health Service Regulation, to operate Accordius Salisbury. Defendant Accordius Health at Salisbury, LLC represented to the public that it had the ability to accept and care for persons with significant medical and nursing needs and that its stuff and employees were properly trained, qualified, and sufficient in

number to care for such individuals.

4. Defendant Accordius Health LLC is a limited liability company organized and existing under the laws of the State of New York and having its principal place of business in Englewood Cliffs, New Jersey. Defendant Accordius Health LLC is the management company listed in the nursing license renewal application for defendant Accordius Health at Salisbury LLC for all times pertinent to this action. Upon information and belief, at times pertinent to this action, defendant Accordius Health LLC was directly or indirectly involved in the ownership, operation and/or management of Accordius Salisbury.

## FIRST CLAIM FOR RELIEF

5. The allegations contained in the paragraphs hereinabove are re-alleged and incorporated into this First Claim for Relief by reference.

6. In February of 2020, Ms. Philbeck was admitted to Accordius Salisbury memory unit for long term care. She suffered from dementia, a depressive disorder and diabetes among other health issues. Ms. Philbeck was also a fall risk and had trouble remembering her walker.

7. Ms. Philbeck suffered numerous documented and undocumented falls over the next several months while she was a resident at Accordius Salisbury.

8. During March 2020, because of the Covid-19 pandemic, Accordius Salisbury changed its visitor policy to no longer allow visitors in the building and Ms. Philbeck's family was not able to see her in person or visit her at Accordius Salisbury. The family continued to call and Facetime daily with Ms. Philbeck. From March 2020 through her death, Accordius Salisbury continued to represent to Ms. Philbeck, her family, and her guardian that they were capable of providing her proper care to keep her safe.

9. On October 18, 2020, Ms. Philbeck began to complain of hip pain. Upon assessment, the staff noticed that Ms. Philbeck's right hip was tender and right thigh was swollen. She was sent to Novant Health Rowan where x-rays showed she had a broken hip.

10. On October 20, 2020 Ms. Philbeck had surgery to fix her hip and was discharged back to Accordius Salisbury on October 23, 2020.

11. Upon admission back to Accordius Salisbury, a nurse charted a skin assessment that noted a suspected deep tissue injury to her left heel measuring 1.5 cm X 4.2 cm and that the hip wound had 40 staples and that there was no redness at the incision sight. Heel off-loading was added to Ms. Philbeck's care plan.

12. On October 27, 2020 Ms. Philbeck reported that her hip pain was 9 out 10. The staff also noted that her heel wound was now 2 cm X 7 cm.

13. The next day on October 28, 2020, Ms. Philbeck's physical therapist arrived to her room while nurse's assistant was cleaning her up after she had soiled herself. The physical therapist noticed an open area to Ms. Philbeck's sacrum. The physical therapist charted that she reported this to the nurse the wound care team.

14. The next day, a nurse performed a weekly check on Ms. Philbeck on October 29, 2020, but only noted Ms. Philbeck's suspected heel deep tissue injury and her incision from the surgery. There was no mention of the open area on Ms. Philbeck's sacrum that the physical therapist had found the day before and reported to the nurse and wound care team. Ms. Philbeck's skin breakdown care plan was not updated and the staff did not put any new skin breakdown interventions in place.

15. On October 30, 2020, a Braden scale assessment was done on Ms. Philbeck. The Braden scale is a tool used by caregivers to determine a patient's risk of skin breakdown. Ms. Philbeck was assessed as "At Risk" for skin breakdown. That same day, Accordius Salisbury reported to the federal government that Ms. Philbeck had no skin issues documented despite her heel wound and open area on her sacrum.

16. The next day, on October 31, 2020, a nurse documented Ms. Philbeck's buttock wound as 2 cm X 3 cm and that it was bleeding.

17. On November 3, 2020, a wound assessment was done by nurse practitioner from Integrated Wound Care. She documented that Ms. Philbeck's right heel was now considered a deep tissue injury and was 2.7 cm X 3 cm and she had a left heel wound that was 2 cm X 7 cm. Ms. Philbeck also had redness at her surgical incision site. The nurse practitioner ordered that Ms. Philbeck start on Keflex, an antibiotic. She was supposed to take it 3 times a day for 10 days.

18. According to the Medical Administration Record, Ms. Philbeck never received her Keflex medication.

19. On November 7, 2020, a nurse saw signs of infection at Ms. Philbeck's surgical site. It was red and had reddish/brown drainage and an odor. The nurse covered the site with a dry dressing and put an infection alert slip in the wound care nurse's box. The nurse also recorded that she would call the provider for possible antibiotic therapy, even though Ms. Philbeck was supposed to already be on an antibiotic. The nurse finally noted that Ms. Philbeck had a Stage 2 breakdown on her sacral area and heels. There was no record that the nurse actually called Ms. Philbeck's surgeon or her primary care provider and alerted them of this change

3

in condition.

20. On November 10, 2020 the nurse practitioner from Integrated Wound Care saw Ms. Philbeck and assessed her heel wounds, sacrum wound and hip incision. The left heel was a 5 cm X 5 cm suspected deep tissue injury with skin discoloration, the right heel was 3.5 cm X 5.5 cm deep tissue injury, the sacral pressure ulcer was 10 cm X 8 cm and was unstageable and covered in dead skin and the surgical site wound was 21 cm X .5 cm and was 80% slough (dead tissue) with fluid draining from it. The nurse practitioner performed a debridement of on Ms. Philbeck's sacral wound, meaning she removed the dead tissue.

21. On November 11, 2020, Ms. Philbeck saw her orthopedic surgeon about her right hip incision. He scheduled a hip wash out for the next day and ordered her to start on IV antibiotics.

22. On November 12, 2022, Accordius Salisbury reported to the federal government that Ms. Philbeck has 2 unstageable deep tissue injuries and 1 unstageable pressure injury. That same day Ms. Philbeck was admitted to Rowan Regional Medical Center. She was suffering from acute renal failure, evaluated Troponin and an infection in her right hip wound. Wound cultures were done and they came back positive for infection.

23. On November 14, 2020, Ms. Philbeck's orthopedic surgeon performed surgery to try to fix Ms. Philbeck's right hip wound infection.

24. On November 17, 2020 the hospital placed a PICC line in Ms. Philbeck for long term antibiotic therapy. However, Ms. Philbeck was not able to recover from her overwhelming sepsis.

25. Ms. Philbeck entered hospice care on November 28, 2020 and passed away on November 29, 2020 due to acute renal failure caused by an infected right hip prosthesis.

26. Ms. Philbeck did not have COVID at any time during the care and treatment described herein.

27. Neither the arrangement nor provision of health care services by Defendants was impacted in any manner by Defendants' decisions or activities in response to the COVID pandemic.

28. Defendants never informed Ms. Philbeck or Plaintiff that the arrangement or provision of health care services was impacted by the COVID pandemic in any manner.

29. Defendants were not arranging for or providing health care services in good faith.

30. Defendants' acts and failures, as described in detail elsewhere in this Complaint, constitute gross negligence.

4

31. Defendants' acts and failures, as described in detail elsewhere in this Complaint, constitute reckless misconduct.

32. The defendants were negligent in their care and treatment of Ms. Philbeck in that:

    (a) The nursing staff at Accordius Salisbury failed to follow physician's orders when they failed to administer Ms. Philbeck's Keflex medication;

    (b) The nursing staff at Accordius Salisbury failed to communicate a change in Ms. Philbeck's condition to her physician;

    (c) The nursing staff at Accordius Salisbury failed to accurately identify and assess Ms. Philbeck's skin breakdown;

    (d) The nursing staff at Accordius Salisbury failed to implement proper interventions for Ms. Philbeck's skin breakdown;

    (e) The nursing staff at Accordius Salisbury failed to provide proper wound care for Ms. Philbeck's wounds;

    (f) The defendants failed to provide adequate staffing to meet Ms. Philbeck's needs;

    (g) The defendants failed to properly train their staff to meet Ms. Philbeck's needs;

    (h) Members of the nursing staff at Accordius Salisbury provided medical and nursing care to Ms. Philbeck which was not in accordance with the standards of practice among members of the same professions with similar training and experience situated in the same or similar communities during the same period of time;

    (i) Members of the nursing staff at Accordius Salisbury did not exercise reasonable care and diligence in the application of their knowledge and skill to Ms. Philbeck; and

    (j) Members of the nursing staff at Accordius Salisbury did not use their best judgement in treating Ms. Philbeck.

33. The negligence of the defendants and their agents and employees as described hereinabove was a direct and proximate cause of the injuries suffered by Ms. Philbeck. As a direct and proximate result of the defendants' negligence, Ms. Philbeck suffered a sacral pressure ulcers and foot pressure ulcers that became infected and her surgical site remained infected which lead to severe sepsis and ultimately to her death. As a direct and proximate result of the defendants'

negligence, Ms. Philbeck incurred substantial medical and hospital expenses, suffered excruciating pain and discomfort and ultimately death.

34. At the time of her death, Ms. Philbeck was entitled to bring an action against the defendants for the injuries and damages she suffered as a result of their negligence. This cause of Action survives to the plaintiff.

35. The plaintiff is entitled to recover compensatory damages from the defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for personal injuries to Ms. Philbeck.

36. The medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.

## SECOND CLAIM FOR RELIEF

37. The allegations contained in the preceding paragraphs are re-alleged and incorporated into this Second Claim for Relief by reference.

38. As a direct and proximate results of the defendants' negligence, Ms. Philbeck incurred substantial medical and hospital expenses and suffered extreme pain and discomfort, mental anguish and death.

39. Ms. Philbeck was a loving and devoted mother. She was survived by her five children.

40. As the direct and proximate result of the negligence of the defendants as described above, Ms. Philbeck's children have lost her care, assistance, society, companionship, comfort, guidance, kindly offices and advice.

41. The plaintiff is entitled to recover compensatory damages from the defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for the expenses for care, treatment, and hospitalization incurred by Ms. Philbeck as a result of the defendants' negligence; her pain and suffering; her reasonable funeral expenses; and her present monetary value to her children.

## THIRD CLAIM FOR RELIEF

42. The allegations contained in the preceding paragraphs are re-alleged and incorporated into this Third Claim for Relief by refence.

43. The acts and omissions of the defendants and their employees and agents as alleged hereinabove constitute willful and wanton conduct. These acts and

omissions were undertaken in the conscious and intentional disregard of and indifference to the rights and safety of Ms. Philbeck and others. The defendants, and their employees and agents, knew or should have known that these acts and omissions were reasonably likely to result in injury, damage and harm to Ms. Philbeck and others.

44. The defendants' officers and managers participated in or condoned the willful and wanton conduct of their employees and agents.

45. The plaintiff is therefore entitled to recover punitive damages from the defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## FOURTH CLAIM FOR RELIEF

46. The allegations contained in the preceding paragraphs are re-alleged and incorporated into this Fourth Claim for Relief by reference.

47. The defendants had a duty to Ms. Philbeck and the public to monitor and supervise the defendants' nursing staff to ensure that they were competent to provide care for the residents of Accordius Salisbury and that the care met the applicable standards of care.

48. The defendants committed administrative negligence as follows:

    a. By failing to adopt and enforce appropriate policies and guidelines with respect to the care provided for residents;

    b. By failing to properly train their nursing staff on those policies and guidelines; and

    c. By failing to properly evaluate their nursing staff on their following of those policies and guidelines.

49. As a direct and proximate result of defendants' administrative negligence, Ms. Philbeck incurred substantial medical expenses and injuries, including death.

50. The plaintiff is therefore entitled to recover compensatory damages from the defendants in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## AGENCY AND VICARIOUS LIABILITY

51. The allegations contained in the preceding paragraphs are re-alleged and incorporated into this claim for agency and vicarious liability.

52. On all of the occasions complained of herein, Ms. Philbeck was under the care, supervision, and treatment of the agents and/or employees of the defendants, and the injuries complained of herein were proximately caused by the acts and omissions of the defendants.

53. The defendants had vicarious liability for the acts and omissions of all persons or entities under the defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Ms. Philbeck.

54. The defendants are directly liable for the acts and/or omissions alleged herein due to the direct control, ownership, and/or management of the operations of Accordius Salisbury. This exertion of control, ownership, and/or management by the defendants created a dangerous environment for all residents, including Ms. Philbeck.

55. At all times material hereto, the defendants' representatives and staff (both medical and non-medical) acted as agents and/or employees of the defendants within the course and scope of their agency and/or employment. Consequently, the defendants are vicariously liable to the plaintiff for the acts and omissions of its agents/employees under the doctrine of respondeat superior.

56. At all times material hereto, the defendants owned, operated, managed and/or controlled Accordius Salisbury and are therefore directly liable for all the care provided at Accordius Salisbury. The actions of each of the defendants' servants, agents and employees as set forth herein (both medical and non-medical) are imputed to the defendants in this action.

57. On information and belief, the defendants were aware of the dangerous environment that was created by its methods of management and/or control at all of its facilities, including Accordius Salisbury, and the harm caused to the residents of Accordius Salisbury, including Ms. Philbeck.

## RULE 9(j) COMPLIANCE AND
## MOTION FOR EXPERT QUALIFICATION RE: RULE 9(j)(2)

58. The medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule

8

702 of the North Carolina Rules of Evidence and who is willing to testify that the care did not comply with the applicable standard of care.

59. If the Court later determines that the plaintiff's Rule 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), the plaintiff moves to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and the plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

## NO GOVERNMENTAL AND/OR SOVEREIGN IMMUNITY

60. In the event that any of the Defendants are found to have sovereign and/or governmental immunity, which is denied, such Defendants by their purchase of liability insurance have waived any such sovereign and/or governmental immunity to the extent of their insurance coverage.

WHEREFORE, the plaintiff prays that:

1. The plaintiff have and recover compensatory damages from the defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

2. The plaintiff have and recover punitive damages from the defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

3. The costs of this action, including plaintiff's attorney fees, be taxed against the defendants; and

4. She have and recover such further relief as the Court deems proper.

The plaintiff demands a trial by jury on all issues in this action.

This the 18th day of November, 2022.

*Anna Kalarites* (signature)
Anna Kalarites
Attorney for Plaintiff
N.C State Bar No. 47849
Pishko Kalarites PA
100 N. Cherry Street, Suite 510
Winston-Salem, NC 27101
Telephone: (336) 310-0088
Fax: (252) 565-0471
Email: anna@davidpishko.com


*Justin Holoman* p.p. *Anna Kalue* (signature)
M. Justin Holoman
Attorney for Plaintiff
N.C. State Bar No. 44466
Daniel, Holoman & Associates LLP
232 Causeway Dr.
Unit 1-A
Wrightsville Beach, NC 28450
Telephone: (910) 294-8983
Fax: (910) 679-4363
Email: jholoman@dh-attorneys.com